J-A28020-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| ENIO ESTEBAN AND KIMBERLY ESTEBAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LANE M. LALONE | : | |
| | : | No. 1578 WDA 2019 |
| Appellant | : | |

Appeal from the Judgment Entered November 8, 2019
In the Court of Common Pleas of Cambria County Civil Division at No(s):
2015-3197

BEFORE:  OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    FILED FEBRUARY 05, 2021

Lane M. LaLone (Seller) appeals pro se from the judgment entered on November 8, 2019 in this breach of contract case.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history.  See Trial Court Opinion, 1/21/20, at 1-3 and 5-

_____

[1] Seller purports to appeal from the order denying his post-trial motions. However, an appeal does not lie from the denial of post-trial motions. Jackson v. Kassab, 812 A.2d 1233, 1233 n.1 (Pa. Super. 2002).  We have corrected the caption to reflect the entry of judgment.  Also, although Seller filed his appeal on October 21, 2019, prior to the entry of judgment, "appellate jurisdiction may be perfected after the notice of appeal has been filed, upon docketing of a final judgment."  See Reuter v. Citizens & Northern Bank, 599 A.2d 673, 676 (Pa. Super. 1991); Arcadia Co., Inc. v. Peles, 576 A.2d 1114 (Pa. Super. 1990).

10. In sum, this case arises from a "rent-to-own" contract entered into between Seller and Appellees, Enio and Kimberly Esteban (Purchasers), for a home in Johnstown, Pennsylvania. The trial court convened a non-jury trial on March 28, 2019. On August 29, 2019, the trial court entered a verdict in favor of Purchasers. Seller filed post-trial motions on September 9, 2019, which the trial court denied on September 19, 2019. This timely appeal followed.[2]

Seller presents the following issues[3]:

I. Was the Seller under a real estate installment contract obligated to stay current on the mortgage payments for the subject residence a breach of contract that permitted the [Purchasers] to unilaterally terminate the contract?

II. Did [Purchasers] sufficiently prove that [Seller] acted made fraudulent [sic] or negligent misrepresentations?

_____

[2] Seller and the trial court have complied with Pennsylvania Rule of Civil Procedure 1925(b). However, Seller's three-page 13-issue Rule 1925(b) concise statement is not concise. See Pennsylvania Rule of Appellate Procedure 1925(b)(4); see also Kanter v. Epstein, 866 A.2d 394, 401 (Pa. Super. 2004) (waiving prolix Rule 1925(b) statement where court determined that "outrageous number of issues" was deliberate attempt to circumvent purpose of Rule 1925). While we could find that Seller waived his appellate issues, we decline to do so because the trial court thoroughly addressed them in its opinion.

[3] Seller addresses his four issues under nine headings, contrary to our rules of appellate procedure. See Seller's Brief at 8-30; see also Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). The discrepancy does not hamper our review. See Donahue v. Fed. Express Corp., 753 A.2d 238, 241 n.3 (Pa. Super. 2000).

III.  Did the trial court err in awarding damages to the [Purchasers] when the [Purchasers] abandoned the property and failed to fulfill their obligations under the contract?

IV.  Is the verdict, amount of damages and/or remedy, as determined by the trial court fair, equitable, and consistent with the evidence when it fails to account for the fact that [Purchasers] under the real estate installment sale contract resided in the subject residence for a period of 98 months, January 1, 2007 through March of 2015, and failed to assess the corresponding benefit conferred upon the [Purchasers] by residing in the residence?

Seller's Brief at 3-4 (unnecessary capitalization omitted).

At the outset, we recognize:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

Metro Real Estate Investment, LLC v. Bembry, 207 A.3d 336, 339 (Pa. Super. 2019) (citations omitted). Further, the "credibility of witnesses is an issue to be determined by the trier of fact. On appeal, this Court will not revisit the trial court's determinations regarding the credibility of the parties." Garwood v. Ameriprise Financial, Inc., 240 A.3d 945, 948 (Pa. Super. 2020) (citations omitted). Finally,

[t]he interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer

to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

EMC Morg., LLC v. Biddle, 114 A.3d 1057, 1068 (Pa. Super. 2015) (citation omitted).

Upon review, we find the record supports the trial courts factual findings, including that:

Seller made misrepresentations that were material and made falsely, with knowledge of their falsity, and/or with recklessness as to their truth or falsity. Specifically, Seller misrepresented to Purchasers that he would timely pay the mortgage delinquency using their $15,000 balloon payment in accordance with the [parties'] Contract and Amendment.

From the time the parties entered the Contract on January 5, 2007, Purchasers endured the pressures of two posted Sheriff's sales for delinquent taxes and one mortgage foreclosure. All the while, Purchasers dutifully made their monthly payments and even acquiesced to a $15,000 balloon payment to cure Seller's mortgage deficiency. Seller's misrepresentations induced Purchasers to take these actions.

. . . Purchasers entered into the Contract to obtain ownership of the property. Although the property was not sold in foreclosure, Purchasers were faced with the stark reality that Seller continually failed to apply their payments to the taxes and the mortgage on the Property. After 7½ years of timely payments, Purchasers had no confidence that the Property would not be taken from them in foreclosure or Sheriff's sale. Consequently, Purchasers believed they had no choice but to leave the Property. As a result, all of the monies they paid to own the Property were lost; thus, their resulting injury.

Trial Ct. Op., at 22-23 (record citations omitted).

After careful consideration, we conclude that the well-reasoned opinion authored by the Honorable Linda Rovder Fleming, sitting as the trial court, thoroughly and capably explains why Seller's issues lack merit. As further factual and legal commentary by this Court would be redundant, we adopt Judge Fleming's opinion as our own in disposing of this appeal.[4] See Trial Ct. Op., at 10-25 (addressing Seller's myriad issues and finding: (1) Seller breached the Contract and/or was unjustly enriched because Paragraph 8 of the Contract obligated him to pay off the outstanding mortgage on the property and he did not; (2) the subsequent modification of the Contract modified Purchaser's payment schedule but did not change Seller's obligation to pay the mortgage; (3) Paragraph 8 of the Contract does not provide that

_____

[4] Judge Fleming found the overwhelming majority of Seller's issues waived because he failed to preserve them at trial; she nonetheless engaged in a comprehensive merits analysis. Trial Ct. Op., at 10-25. Our review confirms the waiver findings. On appeal, Seller does not address waiver. The Pennsylvania Rules of Appellate Procedure provide:

> Statement of place of raising or preservation of issues. Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information.

Pa.R.A.P. 2119(e). Seller has not provided such a statement.

the exclusive remedy for breach of the Contract is for the Purchasers to pay the mortgage directly; (4) Purchasers did not waive Seller's default; (5) because of Seller's breach of the Contract, Purchasers were entitled to unilateral rescission; (6) Seller either knowingly or recklessly made misrepresentations regarding the payment of the mortgage and taxes; and (7) Purchasers were entitled to damages and Seller provided no evidence upon which to receive fair rental credit[5]).

Consistent with the foregoing, we adopt Judge Fleming's January 21, 2020 opinion as our own in deciding this appeal.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/5/2021

_____

[5] This claim, first raised by Seller on appeal, that he is entitled to fair rental credit, is contrary to the position he advanced at trial. There, Seller argued the Contract was akin to a mortgage and he was in the position of a bank and was not a landlord; he emphasized that he was therefore not required to maintain the property in a habitable condition, and Purchasers should not have expected he would assist them with lead paint removal or mold remediation. N.T. Trial, 5/28/19, at 47-49.

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CIVIL DIVISION

ENIO ESTEBAN and
KIMBERLY ESTEBAN,

                Plaintiffs,

      vs.

LANE M. LALONE,

                Defendant.

:    No. 2015 – 3197
:    1578 WDA 2019
:
:
:
:
:
:
:
:
:

FILED FOR RECORD
2020 JAN 21 PM 2:57
PROTHONOTARY CAMBRIA COUNTY, PA

*******************

APPEARANCES:

    For the Plaintiffs:      MICHAEL T. CRUM, ESQUIRE

    For the Defendant:      SELF-REPRESENTED

*******************

## OPINION IN SUPPORT OF VERDICT PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)

FLEMING, J., January 21, 2020. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court submits the following Opinion in support of its Verdict dated August 29, 2019, and filed August 30, 2019:

### PROCEDURAL HISTORY

This civil action involves an Installment Land Contract between Defendant, Lane M. LaLone ["Seller"], and Plaintiffs, Enio and Kimberly Esteban ["Purchasers"], to purchase real estate on a "rent to own" basis. On July 31, 2015, Purchasers filed a Complaint against Seller[1] alleging fraudulent misrepresentation, negligent misrepresentation, violation of the Unfair Trade Practices Act and Consumer Protection Law,[2] breach of contract, and unjust enrichment.

---

[1] Purchasers originally named Seller's wife, Lynn S. LaLone, as a co-defendant. On October 23, 2017, Plaintiffs filed a Praecipe to Discontinue the action with prejudice as to Lynn S. LaLone only.

[2] Purchasers eventually withdrew the Unfair Trade Practices Act and Consumer Protection Law claim. N.T. (MAY 28, 2019), p. 5.

55

On October 15, 2014, Seller filed Preliminary Objections challenging the legal sufficiency of Purchasers' Complaint. On November 23, 2015, the trial court sustained Seller's motion to strike based upon insufficient specificity of pleading and allowed Purchasers 90 days to amend their Complaint.[3] Purchasers filed an Amended Complaint on January 28, 2016. On March 15, 2016, Sellers filed an Answer and New Matter to Amended Complaint, claiming that Purchasers breached the agreement with Sellers. On May 12, 2016, Purchasers filed a Reply to Sellers' New Matter.

On October 23, 2017, Purchasers filed a Certificate of Readiness. The trial court scheduled a non-jury trial for June 19, 2018. On June 13, 2018, the trial court continued the trial based on Seller's "Suggestion of Bankruptcy."

On February 28, 2019, Purchasers filed a second Certificate of Readiness. The trial court conducted a non-jury trial on May 28, 2019. The trial court left open the record for 30 days for the parties to submit additional evidence and legal memoranda. On June 27, 2019, Seller's counsel[4] filed a Memorandum of Law but did not forward a copy to the trial court.[5] On June 28, 2019, Purchasers submitted a Legal Memorandum to the trial court.

On August 29, 2019, the trial court rendered a Verdict, granting Purchasers' claims for fraudulent misrepresentation, negligent misrepresentation, breach of contract, and unjust enrichment. The trial court ordered Seller to pay Purchasers restitution of $60,084.60.

On September 9, 2019, Seller filed a Motion for Post-Trial Relief Pursuant to Rule [of Civil Procedure] 227.1. By Order dated September 19, 2019, the trial court denied the Motion. On October 21, 2019, Seller filed a Notice of Appeal. On October 23, 2019, the trial court ordered Seller to file a Concise Statement of Errors Complained of on Appeal pursuant to

---

[3] By Order dated November 23, 2015, the trial court overruled three of Sellers' Preliminary Objections (motions to strike in the nature of a demurrer (1) for legal insufficiency under the gist of the action doctrine; (2) for legal insufficiency under the economic loss doctrine; and (3) for failure to conform to law or rule of court and legal insufficiency). The trial court also dismissed a fifth Preliminary Objection (a motion to strike the alleged violation of the Unfair Trade Practices Act and Consumer Protection Law) as conceded by Seller.

[4] Seller's counsel, Douglas S. Sepic, filed a Praecipe for Entry of Appearance on May 28, 2019, the day of trial, but he did not appear at trial.

[5] In its August 29, 2019, Opinion and Verdict, the trial court incorrectly noted that Seller did not respond.

Pennsylvania Rule of Appellate Procedure 1925(b) ["Concise Statement"]. On November 8, 2019, Seller filed a Concise Statement.

## ISSUES RAISED ON APPEAL

In his Concise Statement, Seller raises the following issues on appeal:

A. The Court erred or abused its discretion in finding that [Seller] breached the contract and/or that [Seller] was unjustly enriched, because under the contract, [Seller] was not obligated to pay off the outstanding mortgage on the property.

B. The Court erred in failing to identify what provision of the contract was breached.

C. The Court erred or abused its discretion in finding that [Seller] was unjustly enriched, because any breach would have had to result from a subsequent modification of the written contract.

D. The Court erred or abused its discretion in finding that [Seller] breached the contract and/or that [Seller] was unjustly enriched and/or awarding damages, because [Purchasers'] sole and exclusive remedy, as agreed upon by the parties, was to make payments directly to the Mortgagee (in the form of an offset).

E. The Court erred or abused its discretion in finding [Seller] breached the contract and/or that [Seller] was unjustly enriched, because [Purchasers] waived [Seller]'s alleged default.

F. The Court erred or abused its discretion in failing to find that the evidence established [Purchasers] abandoned the property in violation of the contract, resulting in unilateral termination of the contract forfeiting any damages under the contract.

G. The Court erred or abused its discretion in failing to find [Purchasers] violated the doctrine of "clean hands" resulting from their unilateral abandonment of the property.

H. The Court erred or abused its discretion in finding that [Seller] breached the contract, because [Purchasers] breached the agreement by unilaterally terminating the contract when the same was not permissible under the express language of the agreement.

3

I. On the Counts of Fraudulent Misrepresentation and Negligent Misrepresentation, the Court erred in finding that that a representation of [Seller] was made falsely with knowledge of its falsity or recklessness as to whether it was true or false.

J. On the Count of Fraudulent Misrepresentation and Negligent Misrepresentation, the Court erred in finding there was a "resulting injury" from a false or negligent misrepresentation, because the residence was not sold in foreclosure.

K. On the Count of Fraudulent Misrepresentation and Negligent Misrepresentation, the Court erred or abused its discretion in awarding damages in excess of $15,000.00 (less any subsequent due rent), because $15,000.00 was the amount paid by [Purchasers] on April 16, 2014 and would have been the only payment made in reliance upon any alleged representation by [Seller] that he was intending to pay-off the mortgage before final closing.

L. The Court erred or abused its discretion in awarding the amount of damages and/or remedy determined by the Court is miscalculated and/or is not fair or equitable, as it failed to account for the fact that [Purchasers] resided in the subject residence for a period of 98 months and failed to assess the corresponding benefit conferred upon [Purchasers] by residing in the residence.

M. The Court erred in failing to find that the monthly payments paid by [Purchasers] to [Seller] to reside in [the Property] were fair and reasonable, and it was not inequitable for [Seller] to retain the benefit received.

CONCISE STATEMENT, ¶¶ A-M

## STANDARD OF REVIEW

The standard of review for non-jury trial verdicts is well settled:

. . . [The] appellate [court's] role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.

4

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 664-665 (Pa. Super. 2014). Additionally, appellate review of contract cases is as follows:

The interpretation of any contract is a question of law and th[e] [appellate] [c]ourt's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, th[e] [appellate] [c]ourt need only examine the writing itself to give effect to the parties' understanding. Th[e] [appellate] [c]ourt must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Id.* at p. 665.

Finally, "[i]t is well established that the credibility of witnesses is an issue to be determined by the trier of fact." *Id.* at p. 667. Thus, the appellate court will not revisit the trial court's determinations regarding the credibility of the parties. *Id.*

## FINDINGS OF FACT

The trial court determined that a preponderance of the evidence established the following facts:[6]

1. Seller owns real estate known as 773 Cypress Avenue, Johnstown, Pennsylvania ["the Property"]. N.T. (MAY 28, 2019) ["N.T."], pp. 6-7.

2. On January 5, 2007, Seller's wife and Purchasers entered into an Installment Land Contract ["Contract"] for the Property.[7] *Id.* at pp. 6-9. The Contract provides, *inter alia*:

---

[6] The trial court originally made similar Findings of Fact (without citations) in its Opinion dated August 29, 2019.

Purchaser desires to purchase the [Property] by making installment payments on account of the purchase price, desires to occupy the premises while making such installment payments, and will be delivered the deed to the premises at a later date. Seller is willing to sell the premises and receive payment in installments.

PLAINTIFFS' EXHIBIT A, p. 1. The purchase price was $43,000. *Id.* at p. 2, ¶ 5.

3. The payment schedule is outlined in the Contract as follows:

> The Total Consideration herein is to be paid as follows: Two Thousand Dollars ($2,000.00) due at signing. One Thousand one hundred fourteen dollars and 35 cents is to pay $25.00 credit report, $489.35 for Insurance and School Taxes, $600 for escrow. Eight Hundred Eighty-five Dollars and sixth-five (sic.) cents ($885.65) will go directly toward principal.
>
> ....
>
> The remaining principal balance ($42,114.35) to be paid with interest on the unpaid principal balance from January 5, 2007 until paid, at the rate of Eleven Percent (11.00%) interest per annum. Principal and interest shall be payable … in consecutive monthly installments of $401.06 on the Fifth (5th) day of each month beginning February 5, 2007. In addition, the amount of $65.62 is to be paid monthly to Seller … to be put in escrow toward the payment of county, local and school taxes currently estimated to be $787.45.
> **THE TOTAL PER MONTH TO SELLER IS $466.68 BEGINNING FEBRUARY 5[,] 2007 – WHICH INCLUDES PRINCIPAL, INTEREST, TAXES.**

*Id.*

4. Seller did not sign the Contract. *Id.* at p. 11; N.T., p. 9.

5. Purchasers began to reside at the Property in 2007. N.T., p. 6.

6. Purchasers made payments to Seller in a timely fashion. *Id.* at pp. 10, 12.

7. On or about August 2, 2010, Purchasers received a Notice of Public Sale posted on the Property that contained the following warning: "YOUR PROPERTY IS ABOUT TO

---

[7] Seller's wife, who was originally a named defendant, later claimed she did not sign the Contract. The parties eventually agreed to remove her from this civil action.

6

BE SOLD WITHOUT YOUR CONSENT FOR DELINQUENT TAXES...." PLAINTIFFS' EXHIBIT B; N.T., pp. 9-10.

8. On August 13, 2010, Seller entered into an Agreement to Stay Sale with the Cambria County Tax Claim Bureau. PLAINTIFFS' EXHIBIT C; N.T., pp. 11-12.

9. Seller paid the delinquent taxes for 2007 and the first installment for 2008 on August 13, 2010. PLAINTIFFS' EXHIBITS C, D, AND E; N.T., pp. 11-12.

10. By letter dated August 15, 2010, Seller told Purchasers, "I am sorry for giving you a heart attack last week but as you can see, I have taken care of the situation." PLAINTIFFS' EXHIBIT F; N.T., p. 12. Seller advised Purchasers that the new payment for September (2010) would be $492.08 ($401.06 principal and interest + $91.02 taxes). *Id.*

11. Purchasers paid the increased amount. N.T., p. 12.

12. Seller paid the 2008, 2009, and 2010 taxes on June 21, 2011. PLAINTIFFS' EXHIBIT G; N.T., pp. 12-13.

13. On or about June 27, 2011, Seller mailed Purchasers an Agreement for the Sale of Real Estate ["Agreement"]. N.T., pp. 13-14; PLAINTIFFS' EXHIBIT H. The purchase price was $36,000. N.T., pp. 13-14; PLAINTIFFS' EXHIBIT H, p. 1, ¶ 3.

14. Purchasers did not execute the Agreement. N.T., p. 14.

15. Purchasers learned that the Property was scheduled for Sheriff's Sale on September 9, 2011. N.T., p. 14; PLAINTIFFS' EXHIBIT I.

16. The Property was not sold at tax sale. N.T., pp. 15, 51.

17. Purchasers continued to make timely monthly payments. *Id.* at p. 15.

18. By letter dated March 26, 2014, Seller sent Purchasers an amortization schedule with the following request: "[P]er our telephone conversation last week[,] if you can scrape

7

up $15,000 I think we can make this work. My payoff on my mortgage is $12,000.00 plus I believe I will have some closing costs. I would be willing to take back a mortgage preferably a 1st mortgage on the balance for a period of time with interest." *Id.* at pp. 15-16; PLAINTIFFS' EXHIBIT J.

19. Purchasers agreed to the terms of the March 26, 2014, letter. N.T., p. 16.

20. On or about April 10, 2014, Seller sent Purchasers a proposed Amendment to the Installment Land Contract dated January 7, 2007 ["Proposed Amendment"]. *Id.*; PLAINTIFFS' EXHIBIT K. The Proposed Amendment required (1) Purchasers to pay Seller $15,000 on or before April 16, 2014; (2) Seller to mail receipts for tax payments to Purchasers within 20 days; (3) Purchasers to pay $20,000 on or before March 15, 2015; and (4) the real estate closing to take place (per Paragraph #8 on the Contract) at a location chosen by Purchasers. N.T., p. 17; PLAINTIFFS' EXHIBIT K, ¶¶ 1-3. Purchasers were not required to make payments between April 16, 2014, and March 15, 2015. N.T., p. 17; PLAINTIFFS' EXHIBIT K at ¶ 3. If Purchasers did not pay $20,000 on or before March 15, 2015, 11 percent interest would be retroactively added to the balance as of April 16, 2014. N.T., p. 17; PLAINTIFFS' EXHIBIT K, ¶ 4. Seller afforded Purchasers a maximum of 18 months to pay the final balloon payment or the Property would not be transferred to Purchasers, Purchasers would forfeit all payments, and the property would revert to Seller. N.T., p. 17; PLAINTIFFS' EXHIBIT K, ¶ 5.

21. Purchasers did not execute the Proposed Amendment, but they acted on it by making the $15,000 payment on April 16, 2014. N.T., pp. 17-18; PLAINTIFFS' EXHIBIT L.

22. Purchasers reasonably believed Seller would apply the $15,000 payment to his delinquent mortgage. N.T., pp. 21, 40.

23. On April 16, 2014, Seller and Purchasers signed an Amendment to the Installment Land Contract dated January 7, 2007 ["Amendment"]. N.T., p. 18; PLAINTIFFS' EXHIBIT M. The Amendment required (1) Purchasers to pay Seller $15,000 on or before April 16, 2014; (2) Seller to mail receipts for tax payments to Purchasers within 20 days; (3)

8

Purchasers to pay $20,000 on or before March 15, 2015; and (4) the real estate closing to occur (per Paragraph #7 on the Contract) at a location chosen by Purchasers. N.T., p. 19; PLAINTIFFS' EXHIBIT M, ¶¶ 1-3. Purchasers were not required to make payments between April 16, 2014, and March 15, 2015. N.T., p. 19; PLAINTIFFS' EXHIBIT M, ¶ 3. If Purchasers did not pay $20,000 on or before March 15, 2015, 11 percent interest would be retroactively added to the balance as of April 16, 2014. PLAINTIFFS' EXHIBIT M, ¶ 4. Seller afforded Purchasers a maximum of 18 months to pay the final balloon payment or the Property would not be transferred to Purchasers, Purchasers would forfeit all payments, and the property would revert to Seller. *Id.* at ¶ 5.

24. Purchasers continued to make payments to Seller of $482.08 per month to lower the $20,000 balloon payment due on March 15, 2015, and because they did not trust Seller not to evict them for nonpayment. N.T., pp. 19-20, 40-41. Purchasers were unable to provide proof of payments made after the $15,000 balloon payment. LETTER FROM PLAINTIFFS' COUNSEL DATED JUNE 28, 2019.

25. On or about July 30, 2014, Purchasers received notice that the Property was subject to mortgage foreclosure. N.T., pp. 20-21; PLAINTIFF'S EXHIBIT N.

26. After receiving notice of the mortgage foreclosure, Purchasers called Seller. Seller cursed and screamed at Purchasers and said they "would have to give him time." N.T., pp. 21, 40.

27. In September 2014, Purchasers moved from the Property. *Id.* at p. 22.

28. Purchasers made improvements to the property during the term of the Contract and the Amendment. The improvements include, but are not limited to, lead-based paint and mold remediation, porch improvements, and installation of a handicap ramp and motion detectors, totaling $2,350. *Id.* at pp. 42-44.

29. Seller owned eight rental properties and often used Purchasers' payments for other purposes than payment of the mortgage and taxes on the Property. *Id.* at pp. 56-57.

30. Purchasers' respective testimony was credible. Seller's limited testimony was evasive and lacking credibility in many respects.

31. Purchasers request damages in the amount of their total payments to Seller:

    a.  $2,000 down payment.

    b.  43 monthly payments of $466.68 from February 5, 2007, to August 2010 (43 months x $466.68 = $20,067.24).

    c.  42 monthly payments of $492.08 from September 2010 to March 2014 (42 months x $492.08 = $20,667.36).

    d.  $15,000 on April 16, 2014.

    *Id.* at pp. 22-25, 45-46.

32. Seller did not make a claim for fair rental credit.

## LEGAL ANALYSIS

**A. The trial court did not err or abuse its discretion in finding that Seller breached the Contract and/or that he was unjustly enriched because, under the Contract, Seller was obligated to pay off the outstanding mortgage on the Property.**

Seller first argues that he was not obligated to pay off the outstanding mortgage on the Property; thus, Purchasers breached the Contract. CONCISE STATEMENT, ¶ A. This claim of error fails for two reasons: (1) Seller did not preserve this issue for appeal; and, (2) in the alternative, the Contract and Amendment require Seller to make timely mortgage payments.

First, Seller did not preserve this issue at the non-jury trial. Seller failed to provide evidence or testimony that he was not obligated to pay the outstanding mortgage on the Property. In fact, Seller did not testify at trial except to answer a few questions posed by the trial court. "Pennsylvania law is clear that claims and objections that are not timely made are waived." *Steiner v. Markel*, 968 A.2d 1253, 1257 (Pa. 2009). For these reasons, Seller waived this issue.

10

In the alternative, Seller had an obligation to pay off the outstanding mortgage on the Property under the Contract and the Amendment. The Contract provided:

> 8. SUBJECT TO MORTGAGE: Purchaser acknowledges that [the Contract] may be subject to the mortgage of [Seller] and [Seller's Wife] with an accredited lending institution. ("Mortgagee"). ***Seller shall continue making timely mortgage payments to Mortgagee*** and Purchaser[s] may have the right to demand proof of timely payments or in lieu thereof make direct payments to the Mortgagee but only in the event of a default by Seller in making these timely mortgage payments.

PLAINTIFF'S EXHIBIT A, p. 4, ¶ 8 (*emphasis added*).

The Amendment, which requires Purchasers to make a $15,000 payment to Seller, is ambiguous because it does not explain or clarify the reason for the balloon payment. "[W]here a term in the parties' contract is ambiguous, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 437 (Pa. 2004) (internal quotation and citation omitted).

Here, the history of Seller's delinquencies is illustrative. As early as August 2, 2010, Purchasers received a Notice of Public Sale posted on the Property that contained the following warning: "YOUR PROPERTY IS ABOUT TO BE SOLD WITHOUT YOUR CONSENT FOR DELINQUENT TAXES...." *See* FINDING OF FACT NO. 7. One year later, Purchasers learned that the Property was scheduled for Sheriff's Sale again, this time on September 9, 2011. *See* FINDING OF FACT NO. 15.

By letter dated March 26, 2014, Seller sent Purchasers an amortization schedule with the following request: "[P]er our telephone conversation last week[,] if you can scrape up $15,000 I think we can make this work. ***My payoff on my mortgage is $12,000.00*** plus I believe I will have some closing costs...." *See* FINDING OF FACT NO. 18 (*emphasis added*). On April 10, 2014, Seller forwarded a Proposed Amendment requiring a payment of $15,000, but it was silent as to the reason. *See* FINDING OF FACT NO. 20. Purchasers did not execute the Proposed Amendment, but they acted on it by making the $15,000 payment on April 16, 2014.

11

*See* FINDING OF FACT NO. 21. Purchasers reasonably believed Seller would apply the $15,000 payment to his delinquent mortgage. *See* FINDING OF FACT NO. 22. On April 16, 2014, Seller and Purchasers signed an Amendment. *See* FINDING OF FACT NO. 23. This evidence verifies that Seller was to apply Purchasers' $15,000 payment to the mortgage on the Property.

The trial court also considered Seller's response to the trial court's question about Purchaser's $15,000 payment:

THE COURT: So again, what did you do with the $15,000? Because they gave you 15. You said I am going to pay off the mortgage, that's what they said, you're going to pay off the mortgage and they get a mortgage foreclosure notice.

SELLER: Mortgage, taxes.

THE COURT: Somebody else's? Another property?

SELLER: Or it could have been mine personally, I don't know. It was years ago. Like I said, I still own the house. Never went to Sheriff's sale, never went to tax sale.

\* \* \* \* \*

THE COURT: Exhibit J, you said if you can scrape, this is the letter to [Purchasers], per our telephone conversation last week, if you can scrape up $15,000 I think we can make this work. My payoff on my mortgage is $12,000 plus I believe I will have some closing costs. I will be willing to take a mortgage, preferably a first mortgage on the balance for a period of time with interest. So does that sound like to you promised to pay off your mortgage with the 15 they give you because you really need it, so they better scrape it up.

SELLER: Judge, this is a letter that I sent.

THE COURT: Sir, answer the question. Did you convey the impression that you were going to use the $15,000 that you asked them to scrape up --

SELLER: No.

THE COURT: -- to pay the mortgage?

SELLER: No.

THE COURT: Then why did you say you would have some closing costs?

SELLER: Judge, that was the – that's fine. That was not what it was for, Judge.

12

N.T., pp. 58-59. The trial court found Seller to be evasive and lacking credibility. *See* FINDING OF FACT NO. 30.

After resolving the ambiguity using parol evidence, it is clear the Amendment required Seller to apply Purchasers' $15,000 payment toward the outstanding mortgage. The trial court did not err in determining that Seller breached the Contract and the Amendment by failing to pay the outstanding mortgage on the Property.

The three elements required to prove a cause of action for breach of contract are: "(1) the existence of a contract, including its essential terms; (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citations omitted). Here, Purchasers proved the essential terms of the Contract and the Amendment regarding Seller's payment of the mortgage. The breach occurred on or about July 30, 2014, when Purchasers received notice that the Property was subject to mortgage foreclosure after Seller failed to apply Purchasers' $15,000 payment to the mortgage on the Property. *See* FINDING OF FACT NO. 25. The damages occurred because Purchasers knew their payments were being used by Seller for himself or his other properties, rather than for the taxes and mortgage on the Property. *See* FINDING OF FACT NO. 29. This jeopardized Purchasers' rent-to-own agreement. Therefore, the Court did not err in finding that Seller breached the Contract and the Amendment.

Seller addressed this issue in his post-trial Memorandum, arguing that the terms of the Amendment were clear and unambiguous and made no mention of the mortgage payoff; thus, Seller had no obligation to pay off the outstanding mortgage on the Property. SELLER'S MEMORANDUM, p. 3. Seller cites *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385 (Pa. 1986), in support of his position. In *Hutchison*, the Supreme Court of Pennsylvania stated, "The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." *Id.* at p. 390. Additionally, Seller cited *Bardwell v. Willis Co.*, 100 A.2d 102 (Pa. 1953), and *Yocca, supra*. In *Bardwell* and *Yocca*, the Supreme Court held that, "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and

13

evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Bardwell, supra,* at 104; *Yocca, supra,* at 436-437. Seller's argument is without merit because the terms of the Amendment were not clear and unambiguous, thus paving the way for parol evidence to confirm that Seller was obligated to pay the mortgage on the Property. For these reasons, Seller's first appeal issue (Paragraph A) fails.

**B. The trial court did not err in failing to identify the provision of the Contract breached.**

Next, Seller argues that the trial court failed to identify the Contract provision that Seller breached. CONCISE STATEMENT, ¶ B. As set forth above, Seller violated Paragraph 8 of the Contract. *See* LEGAL ANALYSIS, ¶ A, *supra.* He also violated the Amendment based on the parol evidence. *Id.* Thus, Seller's second appeal issue (Paragraph B) fails.

**C. The trial court did not err or abuse its discretion in finding that Seller breached the Contract and/or that Seller was unjustly enriched, because the breach resulted from a subsequent modification of the Contract.**

In his third appeal issue (Paragraph C), Seller claims the trial court erred because any breach would have had to result from a subsequent modification of the written Contract. CONCISE STATEMENT, ¶ C. Once again, Seller did not preserve this issue for appeal. *See Steiner, supra.*

In the alternative, the Amendment was a subsequent modification of the Contract because it modified the payment schedule. *See* FINDINGS OF FACT NOS. 2, 3, 23. The Supreme Court of Pennsylvania held that "it is well settled that a written agreement may be modified by a subsequent (written or) oral agreement and that this modification may be shown by writings or by words or by conduct or by all three[.]" *Pellegrene v. Luther,* 169 A.2d 298, 300 (Pa. 1961). Further:

> Parties may, by subsequent oral agreement, modify a written contract which they previously have entered into. The new contract thus agreed upon is a substitute for the original one in so far as it alters, modifies, or changes it. Such new contract may be proved by parol by showing either an express agreement or

14

actions which necessarily involve a change. When the subsequent oral contract makes only a modification of the prior written one, the terms of the written contract not modified or changed remain effective.

*Knight v. Gulf Ref. Co.*, 166 A. 880, 882 (Pa. 1933) (citations omitted).

Here, the Amendment changed Purchasers' payment schedule; it did not modify or change the other terms of the Contract, specifically, Seller's requirement to pay the mortgage. Thus, the unmodified terms of the Contract remained effective. Therefore, Seller breached both the Contract and the Amendment by not applying Purchasers' $15,000 balloon payment to the mortgage. *See* LEGAL ANALYSIS, ¶ A, *supra*. For these reasons, Seller's third appeal issue (Paragraph C) fails.

**D. The trial court did not err or abuse its discretion in finding that Seller breached the Contract and/or that Seller was unjustly enriched and/or that Purchasers were entitled to damages, because Purchasers did not have a sole and exclusive remedy.**

In his fourth appeal issue (Paragraph D), Seller claims the trial court erred in awarding damages because Purchasers' sole and exclusive remedy was to make payments directly to the Mortgagee. CONCISE STATEMENT, ¶ D. In Seller's post-trial Memorandum, he argues that the Contract provides an exclusive remedy if Seller fails to make timely mortgage payments. SELLER'S MEMORANDUM, p. 4. Seller references Paragraph 8 of the Contract:

> ….Seller shall continue making timely mortgage payments to Mortgagee[,] and Purchaser[s] may have the right to demand proof of timely [mortgage] payments or in lieu thereof make direct payments to the Mortgagee but only in the event of a default by Seller in making these timely mortgage payments.

*Id.* at pp. 4-5; PLAINTIFFS' EXHIBIT A, p. 4, ¶ 8.

Seller cites *John B. Conomos, Inc. v. Sun Co. (R&M)*, where the Superior Court held that "[a]n unjustified breach of a contract does not subject the breaching party to all remedies recoverable under contract law if the contract provides otherwise." *Conomos, supra*, 831 A.2d 696, 708 (Pa. Super. 2003). Seller argues, "Purchasers agreed that their sole and exclusive remedy upon [Seller's] failure to keep current on the mortgage payments was to pay the mortgagee directly…." SELLER'S MEMORANDUM, p. 5.

15

Once again, Seller did not preserve this issue at trial. Seller presented no evidence that Purchasers' sole and exclusive remedy was to make payments directly to the Mortgagee. Thus, Seller waived this issue. *Steiner, supra.*

In the alternative, Purchasers could not have made payments directly to the Mortgagee. Seller had just convinced Purchasers to make a $15,000 balloon payment on April 16, 2014. *See* FINDING OF FACT NOS. 18, 21. Purchasers continued to make their regular monthly payment to lower the next balloon payment of $20,000, due on March 15, 2015. *See* FINDING OF FACT NO. 24. On July 30, 2014, when Purchasers received notice of the mortgage foreclosure, they had no financial means to pay an additional $15,000 to the Mortgagee to cure Seller's default.

Purchasers were entitled to unilateral rescission of the Contract when Seller failed to apply their $15,000 payment to the outstanding mortgage balance. Two cases support this remedy. In *Boyle v. Odell*, 605 A.2d 1260 (Pa. Super. 1992), purchasers brought an action against a vendor for breach of contract to provide them with clear title to property. *Id.* at pp. 1261-1263. Purchasers claimed the vendor "fraudulently and intentionally executed and delivered deeds to them which did not convey title in accordance with the terms of the prior agreement to sell the land." *Id.* at p. 1263. Purchasers sought rescission for the sale of the property, the return of the purchase price, and damages, including expenses. *Id.* The lower court determined that purchasers were not entitled to relief on their breach of contract claim or to rescission and damages. On appeal, the Superior Court disagreed, stating, "Assuming the trial court finds fraud by the defendant, or a breach of contract as alleged by [purchasers] in the first count of their complaint, it clearly appears that [purchasers] would have a right to obtain a rescission of the transaction, as well as recovery of monies from the [vendor]." *Id.* at p. 1265. The Superior Court further noted:

> [I]f it is determined that a purchaser in a real estate transaction has suffered from fraud by the seller, even in the nature of an innocent misrepresentation of a material fact, a right of rescission is established. Moreover, the purchaser is given the election of remedies; he may seek to rescind the deed, or in the alternative, may sue for damages. A plaintiff in these circumstances seeking

16

rescission may not also seek damages, as such remedies would be inconsistent. However, in addition to granting equitable relief, in the nature of rescission, the trial court is also empowered to grant the plaintiffs restitution of appropriate losses incurred.

*Id.* (citations omitted).

*Baker v. Cambridge Chase, Inc.*, 725 A.2d 757 (Pa. Super. 1999), involved a fraudulent residential real estate transaction. *Id.* at p. 759. The Superior Court held that "[t]he remedy requested by the [Plaintiff's] amended complaint is not explicit. However, they claimed fraud in the purchase of real estate, which automatically triggers the right to certain remedies. ..." *Id.* at 766. The Superior Court reviewed the *Boyle* case, *supra*, and agreed that restitution often goes with rescission. *Id.*

Here, the trial court considered Purchaser-Wife's testimony:

Q  Your understanding of that payment of $15,000 was, as [Seller] had indicated, that he was going to payoff the $12,000 mortgage, is that correct?
A  Yes.
Q  When you received this notice of Sheriff's sale, did you take any actions at that time?
A  Yes. We called him right away and I tried to be reasonable with him but he got really mad and he started cursing at us and he didn't answer the phone. He started screaming at us. He didn't give us any explanations.
Q  Did he ever indicate that he was going to pay this off or make this agreement to payoff the mortgage.
A  No. He just say that he was having a rough time and we would have to give him time.
Q  Okay. And what actions did you take after that?
A  I talked with my husband and we moved.
Q  So you moved at that time?
A  Yes.
Q  And did you advise [Seller] that you were moving?
A  No.
Q  When did you move?
A  In September [2014].

N.T., pp. 21-22. *See also* FINDING OF FACT NO. 27.

17

Here, like the purchasers in *Boyle* and *Baker, supra*, Purchasers suffered a breach of contract and fraud by Seller. Seller breached both the Contract and the Amendment because of his failure to pay the mortgage and taxes on the Property. *See* LEGAL ANALYSIS, ¶¶ A, C, *supra*. Further, when Purchasers tried to talk to Seller about the outstanding mortgage, Seller provided no assurance that he was going to pay off the mortgage. Thus, the trial court correctly concluded that Purchasers were entitled to unilateral rescission of the Contract and restitution of their total payments to Seller. For these reasons, Seller's fourth appeal issue (Paragraph D) fails.

**E. The trial court did not err or abuse its discretion in finding that Seller breached the Contract and/or that Seller was unjustly enriched, because Purchasers did not waive Seller's default.**

Seller fifth claim of error (Paragraph E) is that the trial court erred in finding a breach of contract because Purchasers waived Seller's default. CONCISE STATEMENT, ¶ E. In Seller's Memorandum, he claims that Purchasers failed to undertake their contractual remedy of making the outstanding mortgage payments to the Mortgagee between August 2010 and July 2014, and that they failed to exercise any other remedy the Contract provided. SELLER'S MEMORANDUM, p. 6. Thus, Seller alleges that Purchasers waived any claim of default arising from Seller's failure to keep the mortgage current. *Id.* Seller cites *Gray v. Gray*, 671 A.2d 1166 (Pa. Super. 1996), to support his argument. In *Gray*, the Superior Court held:

> A purchaser's default in making payments under a land contract may be waived either by express agreement or by the words or conduct of the seller. If the seller waives the purchaser's default, he may not thereafter take advantage of it by seeking rescission of the contract on the ground of late payment.

*Id.* at p. 1172 (citations omitted). Seller interprets *Gray* to apply to both parties to a land contract; thus, default in performance may be waived by either party. SELLER'S MEMORANDUM, p. 6.

Again, Seller did not preserve this issue at trial. Seller presented no evidence that Purchasers waived Seller's default. Thus, Seller waived this issue. *Steiner, supra*.

18

In the alternative, Seller breached the Contract by failing to pay the mortgage on the Property. *See* LEGAL ANALYSIS, ¶ A, *supra*. Further, Purchasers reasonably believed Seller would apply their $15,000 payment toward the delinquent mortgage. *See* FINDING OF FACT NO. 22. Therefore, Purchasers did not waive Seller's default in keeping the mortgage current. Further, Purchasers were not limited to the contractual remedy of making payments to the Mortgagee. Instead, Purchasers were entitled to unilateral rescission of the Contract and restitution. *See* LEGAL ANALYSIS, ¶ D, *supra*. Accordingly, Seller's fifth claim of error (Paragraph E) fails.

**F. The trial court did not err or abuse its discretion in failing to find that Purchasers abandoned the Property.**

Seller's sixth, seventh, and eighth alleged errors (Paragraphs F, G, and H, respectively) all relate to Purchasers' alleged abandonment of the Property. Seller claims the trial court erred in failing to find that Purchasers abandoned the Property in violation of the Contract, resulting in unilateral termination of the Contract and forfeiture of damages (Paragraph F), "unclean hands" (Paragraph G), and Purchasers' breach of the express language of the Contract (Paragraph H). CONCISE STATEMENT, ¶¶ F-H.

Once again, Seller failed to preserve these issues at trial. Seller presented no evidence that Purchasers abandoned the Property. Therefore, Seller waived these grounds for appeal. *Steiner, supra.*

In the alternative, the evidence supports Purchasers' claim that they were entitled to unilaterally rescind the Contract after Seller's breach. In Seller's Memorandum, he argues, "Pursuant to paragraph 16 of [the Contract], upon the abandonment of the premises by [Purchasers], [Seller] was permitted to retain all amounts which [Purchasers] paid prior to termination." SELLER'S MEMORANDUM, p. 7. This claim is without merit. Because Purchasers were entitled to unilateral rescission, they did not "abandon" the Property. *See* LEGAL ANALYSIS, ¶¶ A, C, D, *supra*. Rather, Purchasers were justified in leaving the Property. Thus, Seller is not permitted to retain all amounts Purchasers paid prior to termination (Paragraph F).

19

Likewise, Seller's claim that Purchasers violated the doctrine of "clean hands" is without merit (Paragraph G). "He who comes into a court of equity must come with clean hands." *Shenango Valley Osteopathic Hosp. v. Dep't of Health*, 451 A.2d 434, 440 (Pa. 1982); *see also In re Adoption of S.A.J.*, 838 A.2d 616, 625 (Pa. 2003). "The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy at issue." *Id.* (citation omitted). Here, Purchasers acted fairly and without deceit when they left the Property after Seller's third significant breach of the Contract.

Finally, Purchasers did not breach the express language of the Contract by unilaterally terminating the contract (Paragraph H). Accordingly, Seller's sixth, seventh, and eighth claims of error (Paragraphs F, G, and H, respectively) fail.

## G. The trial court did not err in finding that Seller's representation was made falsely, with knowledge of its falsity, or with recklessness as to whether it was true or false.

Seller's ninth, tenth, and eleventh issues of appeal (Paragraphs I, J, and K, respectively) relate to whether the trial court erred or abused its discretion in finding fraudulent and negligent misrepresentation by Seller. CONCISE STATEMENT, ¶¶ I-K.

"The elements of fraudulent misrepresentation are as follows: (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance." *Weston v. Northampton Personal Care, Inc.*, 62 A.3d 947, 960 (Pa. Super. 2013). "The elements of a common law claim for negligent misrepresentation are: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. Negligent misrepresentation differs from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words." *Gongloff Contracting, L.L.C. v. L. Robert Kimball &*

*Associates, Architects and Engineers, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. 2015) (citations omitted).

In the case at bar, Purchaser-Wife testified about Seller's breaches of the contract and misrepresentations:

Q    Do you believe, and this is your opinion, that [Seller] was up front with you throughout the dealings in these matters?
A    No.
Q    Do you think he misrepresented any of the terms and conditions?
A    Yes.
Q    In both the original agreement?
A    Yes.
Q    And the $15,000 payment?
A    Yes.
Q    And once again that was intended to do what?
A    To pay the mortgage.
Q    Okay. And did any of the terms and conditions in any of the agreements that you reached with [Seller], do you believe any of those were forthright and forthcoming?
A    Yes.
Q    Do you believe he was being truthful in all of these?
A    No.
Q    So to be clear, you do not believe that [Seller] was dealing fairly with you and explaining all the terms and conditions?
A    Yes.

* * * * *

Q    So once again you're asking the Court to refund you all of the moneys that you paid in since you never received the [P]roperty and that he breached the agreement on a number of occasions?
A    Yes.
Q    And once again, his agreement was to keep the taxes up to date?
A    Yes.
Q    And his agreement was to keep the mortgage up to date?
A    Yes.
Q    And whenever you received that final Sheriff's sale notice and were not given any assurances that that was going to be paid, is that when you decided to move?
A    Yes.

N.T., pp. 25-27.

21

Purchaser-Husband similarly testified:

Q    I asked your spouse what would you like to see the Court do today. Would your answer be the same?
A    It would be the same.
Q    And do you believe that [Seller] breached the agreement?
A    Many times.
Q    Do you believe he misrepresented the reason he was asking you for $15,000 payment?
A    Yes.
Q    When the Sheriff's sale notice was posted, did you lose confidence and trust in [Seller]?
A    Yes. We did.

*Id.* at pp. 45-46. Seller could not even assure the trial court that he would have applied Purchasers' $15,000 payment to the mortgage. *See* LEGAL ANALYSIS, ¶ A, p. 12 (TRIAL COURT COLLOQUY WITH SELLER), *supra*.

Seller made misrepresentations that were material and made falsely, with knowledge of their falsity, and/or with recklessness as to their truth or falsity. *Cf.* CONCISE STATEMENT, ¶ I. Specifically, Seller misrepresented to Purchasers that he would timely pay the mortgage delinquency using their $15,000 balloon payment in accordance with the Contract and the Amendment.

From the time the parties entered the Contract on January 5, 2007, Purchasers endured the pressures of two posted Sheriff's sales for delinquent taxes and one mortgage foreclosure. *See* FINDING OF FACT NOS. 7, 15, 25. All the while, Purchasers dutifully made their monthly payments and even acquiesced to a $15,000 balloon payment to cure Seller's mortgage deficiency. *Id.* at NOS. 6, 11, 17, 21. Seller's misrepresentations induced Purchasers to take these actions.

Seller also argues that the trial court erred in finding there was a "resulting injury" from a false or negligent representation because the residence was not sold in foreclosure. CONCISE STATEMENT, ¶ J. This argument is without merit. Purchasers entered into the Contract to obtain ownership of the Property. Although the Property was not sold in foreclosure,

22

Purchasers were faced with the stark reality that Seller continually failed to apply their payments to the taxes and mortgage on the Property. After 7½ years of timely payments, Purchasers had no confidence that the Property would not be taken from them in foreclosure or Sheriff's sale. Consequently, Purchasers believed they had no choice but to leave the Property. As a result, all of the monies they paid to own the Property were lost; thus, their resulting injury. As the trial court outlined above, Purchasers were entitled to rescission of the Contract and restitution of their total payments to Seller. *See* LEGAL ANALYSIS, ¶ D, *supra*. Accordingly, Purchasers' $15,000 payment was not the only payment made in reliance upon Seller's misrepresentations. CONCISE STATEMENT, ¶ K.

For these reasons, the trial court did not err or abuse its discretion in finding fraudulent and negligent misrepresentation. Thus, Seller's ninth, tenth, and eleventh issues of appeal (Paragraphs I, J, and K, respectively) must fail.

### H. The trial court did not err or abuse its discretion in awarding damages to Purchasers.

Seller argues that the trial court's damage award is either miscalculated or inequitable, as it failed to account for the fact that Purchasers received a benefit from living in the Property. CONCISE STATEMENT, ¶¶ L, M. In Seller's post-trial Memorandum, he alleges that the trial court failed to account for the benefit Purchasers received from living in the residence for 98 months (January 1, 2007, through March 2015). SELLER'S MEMORANDUM, p. 7. Seller claims the fair rental value for the Property is approximately $460 per month. *Id.*

Once again, Seller did not preserve these issues at trial. Seller presented no evidence regarding the fair rental value of the Property. Likewise, Seller did not even claim at trial that he is entitled to fair rental value for 98 months. *See* FINDING OF FACT No. 32. Thus, Seller waived these issues. *Steiner, supra.*

In the alternative, the trial court had no information upon which to award fair rental credit. The trial court cannot *guess* about the fair rental value of the Property. Thus, the trial court did not err in failing to account for the benefit Purchasers received by living in the

23

residence. Purchasers were entitled to unilateral rescission of the Contract as well as recovery of their total payments to Seller in restitution because of Seller's numerous breaches and misrepresentations. *See* LEGAL ANALYSIS, ¶¶ D, G, *supra.* Thus, the trial court correctly included Purchasers' monthly payments in its calculation of restitution.

Regarding Seller's claim of Purchasers' unjust enrichment, case law provides the following guidance:

> Unjust enrichment is essentially an equitable doctrine. We have described the elements of unjust enrichment as benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. The most important factor to be considered in applying the doctrine is whether the enrichment of the defendant is *unjust.* Where unjust enrichment is found, the law implies a contract, referred to as either a *quasi contract* or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred. In short, the defendant makes restitution to the plaintiff in *quantum meruit.*

*Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328–29 (Pa. Super. 1995) (citations omitted).

As stated above, based on the cases of *Boyle* and *Baker, supra*, Purchasers were entitled to unilateral rescission of the Contract, as well as recovery of their total payments to Seller in restitution, because of Seller's numerous breaches and misrepresentations. *See* LEGAL ANALYSIS, ¶¶ D, G, *supra.* Further, because of Seller's numerous breaches and misrepresentations, it would be unjust and inequitable for *him* to retain the benefit of Purchasers' monthly payments, their $15,000 payment, and all other monies paid. It would be unjust and inequitable for Seller to retain the benefit of Purchasers' payments because Purchasers lost the prospect of owning the Property.

The trial court calculated restitution of $60,084.60 as follows:

a. $2,000 down payment.

b. 43 monthly payments of $466.68 from February 5, 2007, to August 2010 (43 months x $466.68 = $20,067.24).

c. 42 monthly payments of $492.08 from September 2010 to March 2014 (42 months x $492.08 = $20,667.36).

d. $15,000 on April 16, 2014.

e. $2,350 improvements.

*See* FINDINGS OF FACT NOS. 3, 28, *supra*. The trial court did not err in awarding restitution of $60,084.60.

## CONCLUSION

The trial court's findings are supported by competent evidence. The evidence should be viewed in a light most favorable to the verdict winner (Purchasers), and the findings should be afforded the same weight and effect on appeal as the verdict of a jury. The trial court did not commit an error in the application of the law. For these reasons, the trial court's Verdict should be AFFIRMED.

BY THE COURT:

Linda Rovder Fleming, J.

25